Your Honors, my name is Judy Rabinovitz. I'm arguing for the Amici ACLU and ACLU of Pennsylvania on behalf of the appellant Leslie, Neville Leslie. And we gave you the whole time. No, I'm going to reserve three minutes for rebuttal. Oh, yeah, no, but I meant you're not Mr. Leslie. Is he in jail? Yes, Mr. Leslie is in jail. He's been in jail now almost four years. And this case is about whether he should get a bond hearing. The district court below erred in numerous ways, but the two principal ways I want to focus on are these. First, it disregarded the two years that he was detained pending this court's review of this case. And second, it treated as the 11 months of detention as insufficient, 11 months of detention without a bond hearing as insufficient to raise serious constitutional concerns. This court should reverse on both grounds. First, a detainee's decision to challenge removal, whether administratively or before the court of appeals, is not grounds for the government to lock them up without a bond hearing for as long as it takes to adjudicate their cases. Second, doesn't the government have the right to hold an alien who has been convicted and served his time but hasn't been removed yet? What is the government supposed to do with somebody under those circumstances? Two issues, Your Honor. First, yes, you're absolutely right. The government has the authority to detain, and this is a situation where they're detaining pending a final decision on removability because Mr. Leslie has not yet been ordered removed. And that was why he brought a petition for review to this court. It was pending for two years, and then this court granted it and remanded back to the Board of Immigration Appeals. So, yes, the government has the authority to detain during that time. The issue here is not whether the government can detain, whether it can detain without a bond hearing. That's the only issue here. The government can detain Mr. Leslie. If they give him a bond hearing and the bond hearing, the judge determines, yes, he's a danger, yes, he's a flight risk, he's going to stay in detention. Well, Congress has directed that somebody with the conviction that Mr. Leslie had must be detained during removal proceedings. Yes, but this circuit in DEOP recognized that it did not authorize detention for, you know, mandatory detention without a bond hearing forever. It only authorized it for a reasonable period of time. And the court also said that. Now, DEOP came down after Judge Conaboy issued his decision in this case. Yes, that's true, Your Honor. So would an appropriate result here to be remanded to Judge Conaboy to reconsider in light of DEOP? It could be, Your Honor, except that Mr. Leslie's already been detained for nearly four years. And to put him through additional delay at this point would be unfair and also is not needed because the issues are all clear before this court. And in addition, there is one issue that DEOP didn't deal with that is where Mr. – which is where Judge Conaboy got confused. DEOP did not deal with the case where an individual was challenging removal before the court of appeals. It only dealt with the case where Mr. DEOP had been challenging removal before the immigration judge and the Board of Immigration Appeals. So the reason why he remains in detention is because he's challenging the removal. I mean, if he agreed to be removed, there would be no constitutional issue. That's true, Judge Sloboder, but this Court in DEOP rejected that as a basis to render detention without a bond hearing reasonable because in that case, Mr. DEOP was challenging his removal as well. It's a heck of a choice he'd have to face, right? If I don't want to be in detention, I can let him deport me, remove me, and forego my challenges. But why shouldn't they remove him? He's been convicted.  I know, but – and then following serving your sentence, you're supposed to get – I mean, the usual process is person gets removed. He doesn't have a right to stay in this country. Right, but he does have a right to a removal proceeding, and there are people who go through removal proceedings who win their removal proceedings. How many? I don't have percentages. How many? Judge Sloboder – well, no, there are a significant number who win their removal proceedings, and bottom line, they have a right. The statute gives them a right. The Constitution gives them a right. I think implicit in Judge Sloboder's question is does this fellow really have a leg to stand on in terms of challenging the basis for his removal? I mean, there's a procedural error that this Court found in terms of – I wouldn't classify it as a procedural error, but he wasn't told about his right to free counsel – or not his right to free counsel, but about the availability of free counsel, and given a list, and so it was sent back, and now there's been a mess-up with respect to the oral recording, and still – but is there any substantive ground, any possibility that this guy could avoid removal? Could avoid? Yes, there's a possibility. I mean, Mr. Leslie is without counsel, and we're amici in this case. So I have not had a chance to talk to him and to examine his case in detail, but he's at least on its face eligible for CAT relief. He's also eligible for Padilla relief if, like most people, he was not advised of the immigration consequences of his plea. I don't know whether he has those claims. He doesn't have an attorney. The issue here is only whether he gets a bond hearing, whether he can be locked up for four years without a bond hearing, and those are issues that an immigration judge can determine at a bond hearing. If an immigration judge says, hey, Mr. Leslie, you're not going to be out of here, you're a flight risk, then he doesn't get released. But this Court in DEOP – Judge Slaughter, this Court in DEOP recognized that neither the statute or the due process clause would permit prolonged detention without a bond hearing. Now, anyone who's subjected to prolonged detention is going to be in the situation you're talking about, Judge Slaughter. They're challenging their removal. So either DEOP's holding applies to no one because they're all challenging removal or the fact that somebody's challenging removal does not give the government license to lock them up without a bond hearing for as long as it takes. Your experience in this, how long does it take, when and early, to get a bond hearing? Oh, a bond hearing should take only a few weeks. I mean, a bond hearing takes 20 minutes. So it doesn't take long to get a bond hearing. The problem is, as you noted, that Congress decided that certain groups of people shouldn't get bond hearings. And the Supreme Court in DeMoor upheld that, but it upheld that for a brief period of time. Reasonable time. And it said that in most cases that was between 45 days and 5 months. So this Court in DEOP considered that issue and went along with the sort of direction that most of the courts are going at this point. Now there's three circuits that have held this. That the mandatory detention statute doesn't authorize mandatory detention for as long as it takes to conclude removal proceedings. It only authorizes detention for a reasonable period of time.  Mr. Benedict, may I interrupt you for just a moment? Of course. The result of a bond hearing would be that the district court judge would determine not only the prongs of detention, that is, whether he's a risk of flight or a danger to the community, but he would also determine what the amount of the bond should be. Isn't that so? That's so, Your Honor. I just want to make one point. It's not clear that it would be the district court that did the bond hearing or an immigration judge. I was going to ask that question. Yes. I mean, I think that the assumption is that whoever does the, whoever holds the bond hearing. Yes, Your Honor. The determination as to what, under what conditions he would be free of detention. Isn't that so? And the condition is normally a monetary one. That's correct, Your Honor. And if the administrative law judge or the district court judge, whoever has charge of this, determines that a bond should be posted of a million dollars, this gentleman would remain in detention, would he not? Yes. And that's the relief that you want is a bond hearing at which the amount would be determined as to whether he should be freed or retained. Or the conditions. It's not only the amount. And the conditions. Yes. Because it would also determine the conditions. The conditions. I beg your pardon. The conditions and the amount, if necessary. Yes, Your Honor. And that's what we're talking about. We're not talking about a final hearing of removal. No. All we're talking about is whether he gets a bond hearing to determine whether he needs to continue to be locked up. And he's been locked up now, as I said, for nearly four years. Would the logical implication of your argument be that every instance where a court of appeals grants a stay of removal, a bond hearing must be conducted? Because one of the arguments you make is that the district court not only had to consider how long he has already been incarcerated, but what does the future look like in terms of how much longer will he be incarcerated? And you've given us statistics from the Administrative Office of the U.S. Courts in terms of how long it takes us courts of appeals to resolve these matters. So is that really what you're asking for? That's one thing that we're asking for, Your Honor. And actually, that's the Ninth Circuit has taken that position. That individuals who get a stay of removal, remember, we're talking about people to whom this court has decided that they've satisfied the standard for a stay. Once it's determined that they satisfy the standard for a stay, because the process of review is going to take at least a year, they should be given a bond hearing. Again, we're not saying they should be released. But simply, the government cannot continue to lock them up without a bond hearing. You know, I'd like to hear from the government and let you save your time for afterward. I just don't know why they aren't giving a bond hearing. Okay. Thank you, Your Honors. You can have that time back, Ms. Rabinowitz. And I do want to express the appreciation of this court for your coming in as amicus in this case. We appreciate this court allowing us to argue. Well, we want to hear it. May it please the Court, I am Florin Bonilla Suarez representing the appellees. The issue in this case, Your Honors, is whether or not Mr. Leslie's detention is reasonable. Why shouldn't you give him a bond? Let's get right to it. Why are you not giving him a bond hearing? Your Honor. That's all they want. Your Honor, if we look at the case in three parts. First, the mandatory detention statute doesn't allow for the government to give Mr. Leslie a bond hearing. Well, it says for a reasonable amount of time, but four years is more than a reasonable amount of time. Your Honor, Mr. Leslie actually has had one bond determination. In 2009, during his POCA review, and during his what review? I apologize, Your Honor. During his post-order custody review, and this is a period of time. I apologize. Where does that appear in the appendix? Your Honor, it's in the docket 10-1 from the district court, appendix G. And there are also documents in Mr. Leslie's opening brief in his exhibits. And this post-order custody review was granted to Mr. Leslie. Talk clearly and slowly. Go ahead. You have to be heard by Judge White in Connecticut. Yes, Your Honor. DHS provided Mr. Leslie with this post-order custody review. Post-order custody review? So this is a review that is conducted after he's been ordered removed from the country? This is, yes, Your Honor. And this is why he had a stay, when he had a stay of removal. That was issued by this court. And it was in, I just want to get the dates here. You know, I'm a little bit confused on the facts now myself. Because wasn't there a, he did have a post-order custody review, and they said you're not going to be released because your detention is mandatory. No, Your Honor. During detention pursuant to 8 U.S.C. 1241, it is not clear whether or not a bond or release is mandatory. I mean, mandatory under, let me just make this right. Did you say 1241? No, I apologize. Or 1231? 1231. 1231. Thank you. And. You're right there, Leonard. So if we look at Section 1, large B, little 1, or little 2, in that section. I'm not sure which one, little 1 or little 2. Of INA 241, Your Honor, or 1231, Section 1231. Yeah, okay. It is not clear whether or not, I guess, a bond determination, or whether or not the agency has to, you know, maintain or keep him in mandatory detention. It is ambiguous. Okay, if it's ambiguous, why don't you just do it so that we can get this settled? Your Honor, there is sufficient constitutional protections. The agency has pursuant to 8 CFR 241.13, provides those mandatorily detained with a determination regarding their release. And in this case, Mr. Leslie was called to charge. Okay, excuse me. Let's get that straight so Ms. Rabinowitz can get it to. 8 CFR, what was the section? 241.13, Your Honor. 241.1. 241.13. .13. And that provides for? That provides for a custody review where the Attorney General can, if the situation warrants, grant bond to those who were mandatorily detained. Okay, but she says we are asking for that for Mr. Leslie. So why don't you just give it to him? Your Honor, the difference. I don't understand. I mean, are we dealing with some failure of the government to just see what's being, what's at issue? No, Your Honor. It's because it's two different statutes. The mandatory. So what? What difference does it make? Why don't they just give him a hearing? Because, Your Honor, under the mandatory detention statute, Congress has specifically stated that those detained under that statute are not entitled to a bond hearing. Yeah, but the Supreme Court has said for a reasonable period of time, right? Yes, Your Honor. Is a reasonable period of time four years? Your Honor, we have to break down the different types of detention. Mr. Leslie, his detention shifted during these. Yeah, I know. And that's sort of administrative gobbledygook, frankly. Why? Is he in the same physical place that he was in before? I believe he may be in the same detention facility, but I'm not sure, Your Honor. So two and two makes four, no matter what section it's under. He's still in detention. I don't understand why you just can't cut through this. Your Honor, he was granted a bond by DHS in the amount of $20,000 on 11-16-2009. So he did have at least one bond determination. And did he not pay it? Is that what happened? Yes, Your Honor. He did not post bond. He asked DHS for reconsideration of the amount, and DHS denied that request. And where is that in the record? Your Honor, you can find those documents in district court. Okay. And also, Mr. Leslie has included his request for reconsideration of the bond amount in his exhibits in the opening. Are you talking too softly? I can't hear you. I can't hear you either. I apologize, Your Honor. I have a cold. So, Your Honor, he has been granted at least one opportunity for bond. In 2009? Yes, Your Honor. Okay. Where? Where does that appear? That's what I'm asking you to repeat, if you will. Yes, Your Honor, it appears in the district court record, 10-1, exhibit G. And it also appears in Mr. Leslie's exhibits from his opening brief. Which exhibit it is in Mr. Leslie's opening brief? He did not label them, Your Honor. Okay. I apologize. Well, he's pro se. Are you now telling us that tomorrow he can ask for this bond hearing? No. He, Your Honor, because of the statute that he is currently detained under, he is not entitled to a bond hearing. Oh, period. So then all this discussion we just had doesn't matter anymore. Is that right? No, Your Honor. What we're looking at are two separate statutes, one that's pre-removal order, one that is post-removal order, and the requirements are different. One requires mandatory detention, and there is no bond determination. Period. So now we're now post-removal. That's the period we're in right now. No, Your Honor. We went from pre-removal order to post-removal order, and currently we're in pre-removal order. We're back in pre-removal order. Yes, Your Honor. And we've been back in pre-removal order for how long? Your Honor, Mr. Leslie was ordered removed for the third time on December. Let me give you the exact date. No, it was remanded by the BIA, remanded it to the EIJ. Yes, Your Honor, because the tapes were not included in the record. Mr. Leslie had, let's see, Mr. Leslie was ordered removed on 12-15-2011. He appealed to the BIA, and his appeal is currently with the BIA, and DHS requested that the BIA expedite Mr. Leslie's appeal, and that was on February 3, 2012. Are you informing us, forgive me, are you informing us that this appearance before the Third Circuit is in the nature of a motion for reconsideration of the $20,000 bond, which he was denied in whatever date it was, when he asked to have it reduced to $2,500? No, Your Honor. Is that what you're asking? No, Your Honor. Well, this is not in the nature of a reconsideration. No, Your Honor. This is an initial request for a bond here. No, Your Honor. He has had one bond hearing previously, and that's where it gets confusing. He's been in pre-removal order detention, and he was in that pre-removal order detention. It sounds like Kafka. Go ahead. Your Honor, he was in pre-removal order detention initially for the first time from March 28, 2008 until the BIA issued a final order of removal on July 11, 2008. Mr. Leslie appealed to this court and requested a stay of motion removal. During the period that Mr. Leslie had a stay of removal, he was being detained under 8 U.S.C. 1 or 1241. 1231? I apologize, Your Honor. 1231. I'm looking at the wrong thing here. Or INA 241. Okay. And during that time, the Department of Homeland Security did give him a bond hearing. It was an administrative bond hearing by DHS, and they did offer him bond. Right. In the amount of $20,000. When this honorable court remanded Mr. Leslie's or granted his ---- Wait, wait, wait. They offered him a bond hearing. Did he have a bond hearing? Yes, Your Honor. DHS reviewed his custody, what is called a post-order custody review, as required by their regulations, which is 8 CFR 241.13. So they were complying with their regulations, and this honorable court should give them deference, Chevron deference, on how their ---- So he had a hearing. He was told he could be released if he could post $20,000 of bond. I'm looking now at his reconsideration request in December of 2009, and they denied reconsideration of the amount of the bond. But then when our court remanded, he no longer became eligible for consideration for release, because now you treat him as subject to mandatory detention under 1226C. That is correct, Your Honor. All right. But right now, I gathered something. What happened on February 3rd, which is this month? Your Honor, DHS requested that the BIA expedite Mr. Leslie's appeal. Appeal to the BIA? Your Honor, on ---- let's see here. Mr. Leslie had his final removal proceeding or his last removal proceeding in front of the immigration judge on 12-15-2011. The IJ ordered him removed for the third time. He appealed to the BIA on December 22nd, and his appeal is still currently pending. That's last week. That's two weeks ago. December 22nd, Your Honor. And then ---- What does he have to do to get a hearing? Let's just, you know, all these numbers. What does he have to do now? What are his options right now? Your Honor, he is subject to mandatory detention under the statute. Congress has spoken. Even if it's not a reasonable amount of time? Your Honor, the district court reviewed Mr. Leslie's detention for reasonable amounts, and that's why at the ---- during my opening, Your Honor. When? When did it do that? Your Honor, the district court, when he filed his habeas, the district court issued its decision in May of 2011. That was before there was any reordering of his removal. That was six months or eight before December 15th, 2011. Yes, Your Honor. When he filed his habeas, he was ---- he had been in mandatory detention for approximately two months after the BIA remanded his appeal. He remanded his case to the immigration judge in accordance with this court's order, July 2010 order. Why didn't we get a copy of that December 15th, 2011 communication? The December 15th, 2011, Your Honor? Yes, that's when the BIA apparently ordered him removed again. You just told us that. Your Honor, I filed some updated exhibits with this honorable court, and although not considered by the district court, it was ---- I was filing it almost as a status report to the court so that this honorable court can see that Mr. Leslie's removal proceedings are continuing. Yes, but we did not have, at least I don't recall seeing the December 15th IJ's order. The items you filed were prior to that. You're letting us know what was happening. Yes, Your Honor, and I will file a status report with the court, Your Honor, and provide this court with that order and all of the subsequent immigration removal proceeding documents. Shouldn't we have had that? Your Honor, these removal proceedings are not part of the district court's decision, and the district court rendered its decision in May 2011. This Mr. Leslie's appeal is regarding the district court's decision with the facts it had as of May 2011. So these are all subsequent events. And the district court could not have known at that time. I'm sorry to take up your time, but district court could not have known at that time that the BIA would remand it back to the IJ because the recording was no good. Yes, Your Honor, it's exactly right. Does that mean that Ms. Rabinowitz did not get notice of it either? She's the amicus who is appearing before us today. Did she know about that order of the BIA? What date, Your Honor? The one that you just told us about, December? Well, there was a May 20, 2011, and then there was a December 15, 2011. I'm just waiting to read the transcript, but I can't follow. This is very confusing. Did she get notice of that? Did she get notice? I will have to check with the agency if they provided her with a copy. We're going to ask her. She's going to get up in a few minutes. But she is aware that he is currently in removal proceedings, as she has just stated. That he is currently in what? Removal proceedings and subject to mandatory detention until such time that the BIA issues a decision whether they affirm the IJ's decision, and then it becomes a final order of removal. And then he goes into 1231A? Yes, Your Honor. Detention. Yes, Your Honor. And that's why it's very important to look at what the district court had before it, those facts, and also that the district court, consistent with Diop and DeMoor versus Kim, looked at all the facts of Mr. Leslie's detention for reasonableness. And she did state that Mr. Leslie or maybe he, Judge Connaboy. He's a he. Okay, yes, Your Honor. He stated that if Mr. Leslie's detention, that Mr. Leslie could come back to the court if his detention continued and Mr. Leslie has not filed a second habeas appeal. So, Your Honors, this court should just look at the facts that were before the district court and affirm the district court's decision because at the time the district court rendered that decision, Mr. Leslie's detention was reasonable under the facts before the court. And you don't want us to add the two detentions together, even though he's in the same place. You don't want us. Is your position, the government's position, that a detention under one number is not the same as the detention under another one? Yes, that's exactly right, Your Honor. So he was in one period of mandatory detention. He then became in a second period of detention, which did not. The statute's ambiguous whether or not he has to be mandatorily detained during that period of time. Oh, that's interesting. So are we in the position now to decide what the ambiguous statute means? Your Honor, Your Honor. Be careful. The government requests that you take Chevron deference because the agency has procedures in effect in place, such as this post-order custody review, and Mr. Leslie was actually granted custody during that post-order custody review. Can he pay the bond now, or that's no longer in effect? No longer in effect, Your Honor, because his removal is now under a different detention statute. Of course. Can we take into account when we make our decision, any of these matters extra the district court record, which the last six months or eight months that you've told us about, the letter of December 15th, 11, and the other information that took place in November of 2011? Are we to just disregard all of that? Your Honor, this court should look at what information the district court had before it. The district court did not have an opportunity to review all of the immigration proceedings from when… Why shouldn't we remand it? Your Honor… Why shouldn't we remand it to the district court so we can look at them? Your Honor, the district court may grant Mr. Leslie's habeas based on the fact that he's still in detention. So it would be proper to remand it and allow the district court to review the new evidence, to take into consideration this court's decision in DEOP, and have an opportunity to decide whether or not Mr. Leslie's detention is now reasonable. You know… Well, now you're telling us, then, that you concede that we should remand, and that one of the issues on remand will be whether the district court should set an amount for a bond. No, Your Honor, I do not concede that. I am requesting that the court… You don't concede the last statement I made. I don't concede… He's not under… He's no longer under the number that permitted it before because now he's under a different statute. No. Yes, Your Honor. Judge Goroff, I am not conceding remand. What I'm requesting this court do is look only at what the district court decided and just review this appeal based on the district court's decision. However, worst-case scenario, if this court decides that the district court needs to conduct further inquiry, then, yes, it would be appropriate for the district court, for this court to remand. And the third part of your question, Your Honor, I forgot. For the district court to conduct a bond hearing. The district court will not be, Your Honor, is not the appropriate place to conduct a bond hearing. If the district court determines that Mr. Leslie should have a bond hearing, the district court can remand it to the immigration judge and the immigration judge will conduct a bond hearing. Under what statute can the district court determine that he should have a bond hearing? I gathered from what you said before that that was over, that was finished. Your Honor. Is there now some vehicle under which the district court can determine that there should be a bond hearing? Your Honor, I apologize if there's some confusion. It's not you. We're responsible. Your Honor, the district court judge, when I cited to 1231, the statute does not apply to the district court judge regarding bond. It applies, it's ambiguous, and therefore the DHS conducts its own bond determination. And that's why I requested Chevron deference on how the DHS, I guess, carries out and how they're trying to, let me think. It's ambiguous. So they're just trying to see what's fair. They give these bond determinations as required by the regulations. The district court, on the other hand, would have authority to remand to the immigration judge if the district court had this case again before it. So the statute 1231 does not apply to the district court. It applies to the administrative body. Thank you. Thank you. If there are no further questions. But we took the time, so we're going to now hear the amicus. Thank you. There was a question as to whether you got notice of some of them. We didn't get notice from the government, but we've been in touch with Mr. Leslie, so we knew that he had lost and we know that he's appealed to the BIA and the briefing has not begun yet. So we're still going to wait for briefing to the BIA and see what they do. I'd like to make four points just quickly, and then I'm glad to respond to any of your other questions. First of all, he did not receive a bond hearing. He received a custody review. This is a file review by the agency. It's not a bond hearing before an impartial adjudicator. If the court wants us to brief that, we're glad to do that. Notably, the government did not bring that up in any of its briefs, in its initial briefs or in its response to our briefs. Second of all, this was recognized here. That's a very important point because she kept telling us that he had a bond hearing, and now you're telling us he didn't have a bond hearing, he had a custody review. Right. I think that, you know, look, I assume that you could call a custody review a hearing of some sort, but not a bond hearing before an impartial adjudicator. And it's not a hearing. It wasn't even in person. It's just they review the record and make their determination. It wasn't even in person, and he asked for a further review, and they said no. They said bring this up next year. A year from now when we review it again, bring it up again. And then that's the next point. This was two and a half years ago. This was two and a half years ago that he had this custody review. I mean, it's like complete disregard that we're talking about a man who is locked up sitting in prison. He couldn't pay a $20,000 bond then, so for two and a half years he's sitting in detention. And for the last 19 months, when he then came back and did what they said and asked for another custody review, they said, no, you can't get one now because you're subject to mandatory detention. And the government's position that, well, he's subject to mandatory detention, so that's the end of it, completely ignores this Court's decision in DIOP, which says, no, mandatory detention is not for as long as it takes. It's for a reasonable period of time. So I think that, first of all, I want to make one other point. You know, the government, it's interesting that the government now sees fit to expedite. Like eight days ago they asked to expedite. When this Court remanded. September the 3rd, I think. When this Court remanded. February 3rd, we were told. February 3rd. What was it, seven days? I mean, three days ago. So anyway, when this Court granted Mr. Leslie's petition for review in July of 2010, it took the government, between the BIA and the agency, seven months to schedule him for a bond hearing. Now they're expediting. He's been in detention 19 months since this Court remanded for a new hearing. I didn't think that what they were expediting is the bond hearing. No, no, they're expediting his case because they want it to end, and obviously the sooner it ends, then maybe the case becomes moot. Well, and of course he costs the taxpayers money every time he's in a federal facility. I want to make another point in terms of why remand is not necessary. The Court here can consider all of this extra time. The Court in Dieppe, the habeas had been denied in October 2009. The Court didn't decide the appeal until two years later. They considered the whole length of the detention. They didn't remand and say, oh, we better send it back to the district court to see if they would now think it's reasonable. I don't know why it took us that long, because it doesn't usually take us that long, and I apologize on behalf of the Court. We may find that there were reasons, but. Right. But whatever, whatever. I mean, now it's been 10 months. I mean, it takes time to brief an appeal. It's been 10 months since the habeas Court decided. There's no reason that this Court my point was not how long it took. My point was just that there's nothing that prevents this Court from considering in its decision those 10 months. However, I also want to make the point that even the district court's decision was wrong, even on the facts as they were then, and that's why I made the point in my opening that the government presumed that the amount of time he was in detention at that point, just in mandatory detention, because they disregarded all the other detention. They chopped it up and said, we don't have to care about that. But just taking the time he was in mandatory detention, they calculated as 11 months, and the district court judge said that was insufficient to trigger constitutional concerns. That is simply wrong. This Court in DIOP held that detention, as it exceeds the averages in DeMoor, which are 45 days to 5 months, then the case for, you know, constitutional concerns becomes higher. So we're talking about to say that detention, which is twice that amount, twice the 5-months amount, triggers no constitutional concerns, you know, is just at odds, can't be reconciled with DIOP. There's no reason why an individual has to wait until they're in detention for 2 years or 3 years. And especially, this goes to your question, Judge VanAschke, the question about the reasonableness of detention has to look not only at how long have you been detained, but how much longer could you be detained. And at that point, it was unclear, but he had just only appealed to the BIA, so it was going to be a few months at least. It turned out, obviously, to be longer. It's turned out now to be, I think, you know, 9 months since then, or 10 months. But so... Have you ever been given a reason why he's being detained? I mean, is it just that he was convicted and he doesn't belong in this country and therefore send them back and he's just fighting because he doesn't want to go back? Where does he have to go back to? Jamaica. The government's position is simply, essentially, they seem to be arguing against DIOP. You know, they seem to be arguing as if this Court's decision, DIOP, didn't happen, because their position is Congress said this was mandatory detention, and so he has to be locked up without a hearing. Their second position is, well, it's true, DIOP said it's only for a reasonable period of time, but this is reasonable. And this is reasonable, they say, because you have to cut up the statutes and it's two years of detention during a stay. You can't count that. You only can count this. How they come up with two months of mandatory detention, it's not the time he's been detained since his hearing. It's the time he's been detained since this Court remanded, and that's been 19 months. Now, I know the case isn't directly on point, but my recollection is that in, and I'll mispronounce it, Zadvodas, they talked about six months being a reasonable period of time. Yes. Once it exceeds six months, then you're getting into the realm of it being unreasonable. Right. Exactly. And we in DIOP suggested that the Court adopt a presumptively reasonable six-month rule after which detention is unreasonable. Now, the Court rejected an across-the-board six-month rule, but as I said, it specifically held that as detention exceeded those periods, it became more constitutionally suspect. So it said we're not going to decide this across the board, that everybody at six months gets a bond hearing, but it has strong language in there recognizing that those are the sort of guideposts and that when detention exceeds that amount, it's more constitutionally suspect. Again, we're talking about detention without a bond hearing. We're not talking about detention. Somebody could be locked up for two years, three years. It may not be constitutionally suspect. But to lock them up without a bond hearing is a different matter. And the Supreme Court upheld that, but it upheld it for a brief period of time. This Court in DIOP did the same thing. It said, yes, mandatory detention is okay for the brief period of time, but neither the statute nor due process authorizes mandatory detention for an unreasonable period of time. And so the issue here is at what point does detention become unreasonable? And to make the last point, we are arguing, Judge Bonaski, also that this case is a good illustration for why, when somebody is granted a stay of removal by this Court, they should get a bond hearing because in that case it's inevitable. And, again, I want to make clear, it's not because the government has engaged in unreasonable delay. You know, detention can be unreasonably prolonged even when the government doesn't engage in unreasonable delay. And DIOP made that clear as well. DIOP said reasonable actions can result in an unreasonably prolonged detention which requires a bond hearing. And that's the issue here. Regardless of whether, you know, the government acted reasonably at all these different times, his detention is unreasonable, at least mandatory detention is unreasonable. Thank you. Thank you. Judge Garth, you okay? Yes. I would like to take a five-minute recess, but I wanted to ask the Court, is there anybody on the last case that can pay for a transcript other than the government? And I think we're not allowed to ask the government anymore for transcripts. I remember getting something in the mail a while ago. Yeah, I would like a transcript too. I would like a transcript. The matters that have taken place since the district court are not fixed in my mind, and we haven't been acquainted with them. I think we might be able to use court money for that, Leonard. I don't know. I'll have to look into it. All right.